John A. TAYLOR, individually and p/p/a W.C.T.S., Plaintiff,

v.

Susanne G. SWARTWOUT et al., Defendants.

Civil Action No. 03–10157–NMG.

United States District Court, D. Massachusetts.

July 24, 2006.

John A. Taylor, Bristol, NH, pro se.

Sara M. Webster, Mellon, Webster & Shelly, P.C., Doylestown, PA, for Plaintiff and Defendants.

Alanna G. Cline, Brighton, MA, John P. Ryan, Ross A. Kimball, Sloane & Walsh, Nur–Ul Haq, Gary C. Crossen, Rubin and Rudman, LLP, Boston, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

In the instant dispute, plaintiff John Taylor ("Taylor") alleges that his former girlfriend, Susanne Swartwout ("Swartwout"), committed a series of torts against him. Swartwout moves for summary judgment on all claims against her.

### I. *Background*

#### A. Factual History

The facts of this protracted and bitter dispute were laid out in great detail in the Court's Memorandum and Order of February 27, 2006. *See Taylor v. Swartwout,* 429 F.Supp.2d 209, 210–12 (D.Mass.2006). To briefly summarize, Taylor and Swartwout became romantically involved in 1995. Taylor alleges that Swartwout quickly developed an "unnatural and obsessive" fixation on him, which he contends is ongoing. Although this is new biology to the Court, he also asserts that Swartwout's alleged fixation led her to become pregnant through misrepresentations regarding her use of birth control. Swartwout gave birth to the couple's son in February, 1996.

Taylor alleges that Swartwout engaged in a pattern of stalking, harassment and assault during the following seven years.

He also asserts that Swartwout engaged in a series of attempts to portray him as a criminal involved with the narcotics trade. According to Taylor, Swartwout sought to substantiate those allegations with three documents which surfaced during litigation in the Massachusetts Probate Court between Taylor and Swartwout over custody of their son ("the custody litigation"). Taylor claims one of those documents was stolen from his home and was used in connection with the other documents to depict him as a drug user, drug smuggler and money launderer. He claims that Swartwout and other persons working on her behalf during the custody litigation repeatedly "published" those documents, to his great embarrassment and humiliation. Taylor asserts that the documents used to portray him as a criminal are fraudulent and that Swartwout's persistent assaults on his character, particularly her suggestions that he was involved with the drug trade, caused him mental and emotional anguish which, in turn, led him to suffer a household accident and sustain further physical injury.

### B. Procedural History

Taylor brought several claims against Swartwout and various attorneys and private investigators who assisted her in the custody litigation. Those defendants moved separately for summary judgment with respect to the claims against them and this Court allowed their motions in a Memorandum and Order dated February 27, 2006. Following that Order, only Taylor's claims against Swartwout remain. Those claims include: 1) stalking, 2) invasion of privacy, 3) defamation, 4) fraud/misrepresentation, 5) abuse of process 6) negligent and intentional infliction of emotional distress, 7) "conspiracy", 8) civil RICO and 9) negligence.

Swartwout filed her own motion for summary judgment on April 19, 2006. In his opposition, Taylor states that he is prepared to abandon some of his claims against Swartwout. Nevertheless, he also argues that his claims for 1) invasion of privacy, 2) defamation, 3) abuse of process and 4) negligent and intentional infliction of emotional distress should not be dismissed on summary judgment. Moreover, he proposes that opposing counsel should be sanctioned for failing to cooperate with him regarding a stipulation of dismissal with respect to his claims.

### II. *Motion for Voluntary Dismissal*

In his opposition, Taylor declares he no longer plans to pursue his claims for 1) stalking, 2) fraud/misrepresentation, 3) conspiracy, 4) civil RICO and 5) negligence. Once an answer or a motion for summary judgment is filed, voluntary dismissal of a claim is prohibited without leave of court. *See* Fed.R.Civ.P. 41(a)(1). A dismissal with leave of court is allowed only on such terms and conditions as the Court deems proper. *See* Fed.R.Civ.P. 41(a)(2).

The Court will consider Taylor's statement as a Motion for Voluntary Dismissal pursuant to Fed.R.Civ.P. 41 and will allow that motion. Accordingly, Taylor's stalking, fraud, conspiracy, civil RICO and negligence claims are dismissed without prejudice.

### III. *Motion for Summary Judgment*

#### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show,

based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Specific Claims

#### 1. Defamation

■ In order to prove defamation, the plaintiff must demonstrate 1) a false and defamatory communication 2) of and concerning the plaintiff which is 3) published or shown to a third party. *Dorn v. Astra USA*, 975 F.Supp. 388, 396 (D.Mass.1997). The lodestar of Massachusetts defamation law is the axiom that truth is an absolute defense to defamation. *See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 42 (1st Cir.1998). A statement cannot be defamatory if it is substantially true. *Reilly v. Associated Press*, 59 Mass.App.Ct. 764, 770, 797 N.E.2d 1204 (2003)("when a statement is substantially true, a minor inaccuracy will not support a defamation claim").

■ Swartwout invokes the so-called litigation privilege. That absolute privilege protects statements made "in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." *Sriberg v. Raymond*, 370 Mass. 105, 109, 345 N.E.2d 882 (1976). The privilege may not be exploited as an opportunity to defame with impunity and "unnecessary or unreasonable publication" to parties outside the litigation can result in the loss of the litigation privilege. *See Milford Power Ltd. P'ship v. New England Power Co.*, 918 F.Supp. 471, 485–486 (D.Mass.1996)(quoting *Sullivan v. Birmingham*, 11 Mass.App.Ct. 359, 362, 416 N.E.2d 528 (1981)). Taylor asserts that he personally observed Swartwout's publication of the documents to members of her family, other attorneys and state and federal politicians who were not involved with the custody litigation in any official capacity. If true, such an act would constitute unreasonable or unnecessary publication and defeat the privilege.

Moreover, a genuine issue of material fact exists with respect to the origin of the documents Swartwout allegedly used for defamatory purposes. Taylor alleges that Swartwout and other persons assisting her in the custody litigation forged or misappropriated the documents later used to portray him as a drug user and smuggler. Swartwout denies that allegation and states that the documents were obtained by private investigators originally working on another case. Accordingly, this issue is

properly left to the jury for determination of credibility.

## 2. Invasion of Privacy

■ To recover in an action for invasion of privacy pursuant to M.G.L. c. 214, § 1B for dissemination of private information, "a plaintiff must establish that the disclosure was both unreasonable and either substantial or serious." *Ayash v. Dana–Farber Cancer Inst.*, 443 Mass. 367, 382, 822 N.E.2d 667 (2005). To fall under the protection of the statute, the disclosed facts must be of a "highly personal or intimate nature." *Bratt v. Int'l Bus. Machs. Corp.*, 392 Mass. 508, 518, 467 N.E.2d 126 (1984). However, there can be no invasion of privacy where the facts, though highly personal, are already in the public domain. *See Brown v. Hearst Corp.*, 862 F.Supp. 622, 631 (D.Mass.1994). Moreover, "[w]hen the subject matter of the publicity is of public concern . . . there is no invasion of privacy." *Ayash*, 443 Mass. at 382, 822 N.E.2d 667 (quoting *Boston Herald, Inc. v. Sharpe*, 432 Mass. 593, 612, 737 N.E.2d 859 (2000)).

■ Here, Taylor's invasion of privacy claim relates most directly to Swartwout's 1) alleged public revelation of information related to Taylor's participation in a sealed federal grand jury proceeding in the early 1990s and 2) alleged dissemination of a highly-privileged letter that Taylor transmitted to his then co-counsel regarding their respective roles in representing a client in a criminal defense matter. Swartwout alleges her invasion of Taylor's privacy was neither unreasonable nor serious and, in any event, the information disclosed was a matter of public concern.

Taylor contends that 1) those documents contain information about himself that he did not want exposed to the public eye and 2) Swartwout used those documents to support false allegations concerning his involvement with drug trafficking. Those false allegations were purportedly made part of the public record in the custody litigation.

If the allegation that Swartwout used the relevant documents in the custody litigation to portray Taylor as a drug user, drug smuggler and money launderer is proved, Taylor can establish that the disclosure was "unreasonable and either substantial or serious". Moreover, a reasonable jury could find that those documents contained private information of a "highly personal or intimate nature" which was not a matter of public concern, especially with respect to the sealed grand jury proceedings. *See Dasey v. Anderson*, 304 F.3d 148, 154 n. 5 (1st Cir.2002).

Again, Swartwout argues that the litigation privilege makes summary judgment appropriate. The Probate Court in the custody litigation found that Swartwout's allegations, which were based on the documents at issue, were indeed false and were made as part of a malicious attack on Taylor's character. Nevertheless, the litigation privilege is absolute and "provides a complete defense even if the offensive statements are uttered maliciously or in bad faith." *Doe v. Nutter, McClennen & Fish*, 41 Mass.App.Ct. 137, 140, 668 N.E.2d 1329 (1996). However, just as this Court noted with respect to its discussion of Taylor's defamation claim, unnecessary or unreasonable publication to parties outside the litigation can result in the loss of the litigation privilege. Here, Taylor alleges that Swartwout repeatedly published the relevant documents to parties outside the litigation. If he can prove that, Swartwout is not entitled to invoke the privilege.

■ Swartwout also attempts to raise, in support of her motion, the statute of limitations. Specifically, she claims that it

bars Taylor's invasion of privacy claim because he avers that she broke into his residence to steal confidential files in 1999. If material, that event would fall outside the three-year scope of the statute of limitations imposed on tort actions in the Commonwealth of Massachusetts. *See* M.G.L. c. 260, § 2A. However, that incident is not the basis of Taylor's claim. A claim for invasion of privacy is based on the *disclosure* of sensitive, private information, not the tortious or illegal acquisition thereof. *Ayash*, 443 Mass. at 382, 822 N.E.2d 667. Taylor claims that, between 2000 and 2003, Swartwout disseminated private information in the documents at issue. Because Taylor's complaint was filed on January 23, 2003, the statute of limitations does not bar his claim.

In any event, an extremely convoluted and contentious dispute of material fact exists concerning the origin, legitimacy and purpose of the private documents Swartwout allegedly disseminated in an attempt to harm Taylor. The existence of such a dispute alone precludes summary judgment on this claim.

### 3. Abuse of Process

■ The elements of an abuse of process claim under Massachusetts law are that 1) a process was used 2) for an ulterior or illegitimate purpose 3) that results in damage. *Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 407, 772 N.E.2d 552 (2002). The Supreme Judicial Court has held that it is the "subsequent misuse of the process, though properly obtained, [which] constitutes the conduct for which the liability is imposed." *Quaranto v. Silverman*, 345 Mass. 423, 426, 187 N.E.2d 859 (1963).

■ Swartwout appears to presume that Taylor's claim for abuse of process is based on her misconduct during the custody litigation. She argues accordingly that no abuse of process occurred because it was Taylor who initiated the custody litigation and he was not an unwilling or coerced participant in those proceedings.

However, Taylor has referenced several other legal proceedings initiated against him by Swartwout. They include 1) a criminal complaint for assault and battery, 2) criminal complaints for child abuse, 3) civil complaints for contempt of court and 4) proceedings under M.G.L. c. 209A to obtain restraining orders and for alleged violations thereof. Swartwout initiated all the above proceedings and has offered no argument whatsoever in her motion for summary judgment addressing why she is entitled to summary judgment with respect to those alleged abuses of process.

Taylor has included multiple state court findings in which Swartwout was found to have engaged in a series of baseless and abusive filings. He also avers that all the complaints initiated by Swartwout to date were calculated attempts to obtain an advantage in unrelated litigation and have been resolved in his favor, albeit at "considerable expense". Taylor's claim for abuse of process is, therefore, plainly sufficient to survive summary judgment.

### 4. Infliction of Emotional Distress

Count VI of Taylor's complaint asserts that Swartwout has "engaged in various acts to tortiously inflict emotional distress and mental suffering, whether through negligent or intentional design". Given that Taylor has hedged his bet as to whether his emotional distress was caused by an intentional or negligent tort, the Court will analyze his claim, and Swartwout's motion for summary judgment on that claim, under both rubrics.

#### a. Intentional Infliction

■ To sustain a claim for intentional infliction of emotional distress, Taylor

must prove that 1) Swartwout intended to inflict emotional distress or knew, or should have known, emotional distress was likely to ensue from her behavior, 2) her behavior was extreme, outrageous and beyond all possible bounds of decency, 3) her actions caused him distress and 4) his emotional distress was so severe that no reasonable man could be expected to endure it. *See Gouin v. Gouin,* 249 F.Supp.2d 62, 73–74 (D.Mass.2003)(citing *Agis v. Howard Johnson Co.,* 371 Mass. 140, 144–45, 355 N.E.2d 315 (1976)).

 Swartwout does not address this claim in her motion for summary judgment. Nevertheless, Taylor's claim would survive summary judgment even if she had addressed it.

 Specifically, a defendant's extreme and outrageous conduct "may be found in the totality of the circumstances." *Id.* (citing *Boyle v. Wenk,* 378 Mass. 592, 595, 392 N.E.2d 1053 (1979)). Taylor alleges that Swartwout has initiated close to 100 motions and/or post-judgment actions against him following the resolution of the custody dispute, all of which have been resolved in his favor. Many of those claims were found to be baseless by various state courts. Devoting one's time to the prosecution of a fusillade of baseless and malicious legal actions would, if proved, fall outside the bounds of decency and be considered utterly intolerable in a civilized community. Such a pattern of conduct is sufficient to sustain a claim for intentional infliction of emotional distress.

### b. Negligent Infliction

 In a claim for negligent infliction of emotional distress, Taylor must demonstrate 1) negligence, 2) emotional distress, 3) causation, 4) physical harm manifested by objective symptomatology and 5) that a reasonable person would have suffered emotional distress under the circumstances. *Conley v. Romeri,* 60 Mass.App. Ct. 799, 801, 806 N.E.2d 933 (2004). Swartwout argues that Taylor has failed to sustain the negligence element of this claim in that he has not averred that Swartwout owed any duty to him. Where there is no duty, Swartwout contends, there can be no negligence.

Her argument is unpersuasive. She relies on what is, at most, a technical deficiency in Taylor's complaint, alleging that she is entitled to summary judgment because he did not explicitly invoke a commonly understood duty of care owed as a general matter to all persons. *See id.* The notion that one owes a duty to refrain from filing multiple baseless legal actions against another is an accepted tenet. The fact that it was an unstated assumption in Taylor's complaint does not warrant summary judgment against him.

 However, a more serious problem exists with the element of causation and injury. Taylor admits in his complaint and opposition that he was careless in securing a ladder used for household chores but claims that his carelessness occurred because he was so distraught and anxious about Swartwout's inappropriate and illegal conduct.

Intervening causes will insulate a tortfeasor from liability when they are not foreseeable consequences of a party's original negligence. *Russo v. Baxter Healthcare Corp.,* 140 F.3d 6, 11 (1st Cir.1998). In determining whether an intervening cause is sufficient to negate proximate causation on the part of the primary tortfeasor, the Restatement (Second) of Torts § 442 directs courts to consider, *inter alia,* whether the intervening cause:

1) created harm different in kind from that which would have otherwise resulted from the actor's negligence;

2) appeared, after the event, to be extraordinary rather than normal in view of the circumstances;

3) operated independently of any situation created by the actor's negligence, or was not a normal result of such a situation; or

4) arose from an act of a third party or that party's failure to act.

*See id.*

Taylor's behavior in carelessly setting up a ladder, while allegedly influenced by severe anxiety and suicidal ideation, is not a foreseeable consequence of Swartwout's alleged negligent conduct. Taylor's conduct resulted in bodily injuries substantially different in kind from those which could have been reasonably anticipated by Swartwout's conduct. His carelessness operated independently of Swartwout and he cannot, therefore, establish a link of causation between his injuries and Swartwout's alleged negligence.

While questions of causation with respect to intervening and proximate cause are usually reserved for the jury, summary judgment is appropriate when the evidence, and all reasonable inferences derived therefrom, can lead to only one conclusion. *Staelens v. Dobert*, 318 F.3d 77, 79 (1st Cir.2003). This is such a case. Accordingly, Swartwout is entitled to summary judgment on Taylor's claim for negligent infliction of emotional distress.

### ORDER

In accordance with the foregoing, Defendant's Motion for Summary Judgment (Docket No. 106) is, with respect to Plaintiff's claim for negligent infliction of emotional distress, **ALLOWED,** but is, in all other respects, **DENIED.** Plaintiff's re-quest for sanctions against Defendant's Counsel is **DENIED.**

**So ordered.**